## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 24 2018, 5:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Erika Washington,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 24, 2018<br><br>Court of Appeals Case No.<br>18A-CR-385<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Stanley Kroh, Magistrate<br><br>Trial Court Cause No.<br>49G03-1706-F5-20558 |

**May, Judge.**

[1] Erika Washington appeals following her convictions of Level 3 felony aggravated battery inflicting injury that causes a protracted loss or impairment

of the function of a bodily member or organ[1] and Class B misdemeanor criminal mischief.[2] Washington argues her fourteen-year sentence is inappropriate. We affirm.

## Facts and Procedural History

[2] Washington dated Darion Slaughter, and their relationship produced a child. After Washington and Slaughter separated, they shared custody of their child. Subsequently, Slaughter began dating Shartasia Hughes.

[3] On May 30, 2017, Shartasia and her sister, Shaydriona, took Slaughter to work in Shartasia's car. After dropping off Slaughter, Shartasia and Shaydriona noticed Washington following them closely in her SUV. Washington began to ram Shartasia's car from behind with her SUV. Washington hit Shartasia's car four or five times before Shartasia lost control and crashed into a ditch. Washington fled the scene. Shartasia called Slaughter and Abigail Ackerman, who drove them to buy a new tire. When they returned to Shartasia's car, Shartasia and Slaughter stayed with the car, and Shaydriona left with Ackerman.

[4] Three or four hours after the crash, Shartasia and Slaughter were standing behind Shartasia's car, and Washington drove directly at them. Slaughter

---

[1] Ind. Code § 35-42-2-1.5(2) (2014).

[2] Ind. Code § 35-43-1-2(a) (2016).

managed to jump out of the way. However, Washington struck Shartasia, pinning her between the back of the car and the front of Washington's SUV. When Washington backed up, Shartasia fell to the ground. Washington then drove over Shartasia. Shartasia "felt all four tires" go over her body. (Tr. at 49.) Shartasia suffered significant bodily injuries, including a broken pelvis and hip socket, a mangled ankle, and a knee that needed a rod surgically implanted into the bone. Shartasia spent a month recovering in the hospital and then five months in a wheelchair while she relearned how to walk.

[5] The State charged Washington with Level 5 felony battery by means of a deadly weapon,[3] Level 6 felony criminal recklessness committed with a deadly weapon,[4] Class B misdemeanor criminal mischief, and Level 3 felony aggravated battery inflicting injury that causes a protracted loss or impairment of the function of a bodily member or organ. At trial, the State proceeded only with the charges of aggravated battery and criminal mischief. A jury found Washington guilty of both counts. The trial court imposed concurrent sentences of 180 days for criminal mischief and fourteen years for aggravated battery.

# Discussion and Decision

---

[3] Ind. Code § 35-42-2-1(c)(1) & (g)(2) (2016).

[4] Ind. Code § 35-42-2-5(b)(1)(A) (2014).

[6]     Washington argues her sentence is inappropriate in light of her character and the nature of her offense.

> We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

*Couch v. State*, 977 N.E.2d 1013, 1017 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*. The appellant bears the burden of demonstrating her sentence is inappropriate. *Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011), *trans. denied*.

[7]     When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). The

sentencing guideline for a Level 3 felony is a fixed term between three and sixteen years, with the advisory sentence being nine years. Ind. Code § 35-50-2-5(b) (2014). The sentencing guideline for a Class B misdemeanor is a fixed term of no more than 180 days. Ind. Code § 35-50-3-3 (1977). The trial court sentenced Washington to fourteen years; thus, she received a sentence above the advisory but below the maximum.

[8]     Regarding the nature of the offense, the trial court noted the significant injuries Shartasia sustained. Shartasia suffered a broken pelvis and needed a rod surgically implanted in her knee, which left her unable to walk for five months. *See Mann v. State*, 895 N.E.2d 119, 122 (Ind. Ct. App. 2008) (victim experiencing muffled hearing two months after incident showed protracted loss of bodily member or organ).

[9]     When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). Washington does not have a valid driver's license and has been convicted multiple times for driving without a license. Washington's repeated violation of the law reflects negatively on Washington's character.

[10]    Washington argues her remorse and her difficult childhood should be considered, however we note the trial court found Washington may respond well to imprisonment based on her background and upbringing. "The trial court is not required to give the same weight to any mitigator as would the defendant." *Davies v. State*, 758 N.E.2d 981, 987 (Ind. Ct. App. 2001). The trial

court did not have to consider Washington's background. *See Bethea v. State*, 983 N.E.2d 1134, 1141 (Ind. 2013) ( "evidence of a difficult childhood is entitled to little, if any, mitigating weight").

Given the nature of the offense, *i.e.*, the severity of Shartasia's injuries, and the character of the offender, *i.e.*, Washington's repeated violation the law, we cannot say Washington's sentence is inappropriate. *See Clark v. State*, 26 N.E.3d 615, 619 (Ind. Ct. App. 2014) (defendant's extensive criminal history showed bad character and allowed for aggravated sentence), *trans. denied.*

# Conclusion

In light of Washington's character and the nature of her offense, her fourteen-year sentence is not inappropriate. Accordingly, we affirm.

Affirmed.

Baker, J., and Robb, J., concur.